UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-21308-CIV-GOLD/McALILEY

DAVID DERMER,

      Plaintiff,

v.

MIAMI-DADE COUNTY, a political
Subdivision of the State of Florida;
MIAMI-DADE COUNTY BOARD
OF COUNTY COMMISSIONERS,

      Defendants.

_____/

ORDER ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT;
STRIKING ORDINANCE 06-617 AS UNCONSTITUTIONAL; RESERVING RULING AS
TO THE VALIDITY OF ORDINANCE 06-618; ADMINISTRATIVELY CLOSING CASE

THIS CAUSE is before the Court upon (1) Defendants' Motion for Summary Judgment [DE 37][1]; and, (2) Plaintiff's Cross Motion for Summary Judgment [DE 56]. The parties have filed responses, replies, as well as affidavits and other summary judgment evidence in support of their arguments. I held oral argument on the subject motions on May 6, 2008. Having reviewed the motions and related pleadings, the record, the parties' arguments and the relevant case law, I conclude that Miami-Dade County Ordinance 06-617 is unconstitutional as it violates the rights guaranteed by the First Amendment of the Constitution of the United States of America ("U.S. Constitution"). Having so decided, Defendants' Motion for Summary Judgment is denied as it relates to Ordinance 06-617

---

[1] Defendants filed the instant motion as a Motion to Dismiss [DE 37]. Pursuant to Federal Rule of Civil Procedure 56, I converted the motion into a Motion for Summary Judgment [DE 51].

1

(codified at § 12-23 (4) of Miami-Dade County Code), and Plaintiff's Cross Motion for Summary Judgment, in as much as it seeks judgment on the claim that Ordinance 06-167 is unconstitutional, is granted.  A ruling on whether Miami-Dade County Ordinance 06-618 (codified at §§ 12-23 (1)-(3) of Miami-Dade County Code) is an unconstitutional usurpation of self-executing powers given to citizens by the Florida Constitution and the Miami-Dade County Home Rule Charter to petition their government is stayed pending the Florida Supreme Court's decision in *Kurt S. Browning, et al. v. Fla. Hometown Democracy, Inc. PAC, et al.,* Case No. SC08-884 (lower tribunal case no. 1DO7-6024).

I.   Factual Background

The following facts are undisputed and supported by evidence in the record: [2]

A.   Miami-Dade County Home Rule Charter

In 1956, the Florida State Constitution was amended to make Miami-Dade County a Home Rule Charter County. In 1957, the Charter was adopted, becoming, essentially the

---

[2]

"Conclusory allegations without specific supporting facts have no probative value." *McKenzie v. Citation Corp.*, No. 05-0138, 2007 WL 1424555, *6 (S.D. Ala. May 11, 2007) (quoting *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)).  Material that is redundant, immaterial, impertinent or scandalous must also be stricken from the record in deciding a motion for summary judgment.  *Id.* at 8.  Finally, hearsay statements, even if stated in an affidavit or deposition, cannot be considered.  *See Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment."); *Robinson v. LaFarge N. Am., Inc.*, 240 Fed. Appx. 824, 829 (11th Cir. 2007) (stating that  inadmissible hearsay is not considered probative evidence) (citing *Zaben v. Air Prods. & Chems.*, 129 F.3d 1453, 1455-57 (11th Cir. 1997)).  Having reviewed the parties' statements of undisputed facts, the objections and evidence in the record, I find the following to be legal conclusions, argumentative statements and opinions, and conclusory statements without any probative value: Plaintiff's Statement of Undisputed Facts, DE 57 at ¶¶ 7, 8, 13-16, 18- 22, & 36; Defendants' Statement of Undisputed Facts, DE 59, ¶¶ 5 (except first sentence), 6 (except first sentence), 7, 9, 10 (except first sentence),  11 (except first sentence), 12 (except language of Section 12-23, Miami-Dade Code which will be quoted where applicable).

"Constitution" for Miami-Dade County.  (Plaintiff's Statement of Undisputed Facts, DE 57 at ¶ 23).  Article VIII, Section 11(1)(i) of the 1885 Florida Constitution, carried forward by Article VIII, section 6(e) of the 1968 Florida Constitution, states that the Home Rule Charter "shall provide a method for … initiative and referendum, including the initiation of and referendum on ordinances …".  (*Id.* at  ¶ 24).  In turn, section 1.01(a) of the Home Rule Charter sets forth the powers of the Board of County Commissioners, including:

> Adopt such Ordinances and resolutions as may be required in the exercise of its powers, and prescribe fines and penalties for the violation of ordinances;
> Perform any other acts consistent with law which are required by the Charter or which are in the common interest of the people of the county;
> Exercise all powers and privileges granted to municipalities, counties, and county officers by the Constitution and laws of the State, and all powers not prohibited by the Constitution or by this Charter;

(*Id.* at  ¶ 25).

The Home Rule Charter provides the only method for initiating referenda on ordinances. Section 8.01, INITIATIVE AND REFERENDUM, provides that:

> The Electors of the County shall have the power to propose to the Board of County Commissioners passage or repeal of ordinances and to vote on the question if the Board refuses action, according to the following procedure:
> 1.  The person proposing the exercise of this power shall submit the proposal, including the ballot language, to the Board which shall without delay approve as to form a petition for circulation in one or several copies as the proposer may desire.
> 2.  The person or persons circulating the petition shall, within 60 days of the approval of the form of the petition, obtain the valid signatures of voters in the county in numbers at least to four percent of the registered voters in the county on the day on which the petition is approved, according to the official records of the County Supervisor of Elections. In determining the sufficiency of the petition, no more than 25 percent of the valid signatures required shall come from voters registered in any single county commission district. Each signer of a petition shall place thereon, after his name, the date, and his place of residence or precinct

3

> number. Each person circulating a copy of the petition shall attach
> to it a sworn affidavit stating the number of signers and the fact
> that each signature was made in the presence of the circulator of
> the petition.
>
> 3.      The signed petition shall be filed with the Board which shall within
> 30 days order a canvass of the signatures thereon to determine
> the sufficiency of the signatures. If the number of signatures is
> insufficient or the petition is deficient as to form or compliance
> with this Section, the Board shall notify the person filing the
> petition that the petition is insufficient and has failed.

(*Id.* at ¶ 26). Section 8.02 of the Charter provides the procedures for obtaining signatures
for a recall of a Commissioner, providing similar procedures for signature collection, but
providing that to recall a Commissioner four percent of the electors in the Commission
District must sign the Petition. (*Id.* at ¶ 27).  The provisions of Section 8.01 and 8.02 are
self-executing.  (*Id.* at ¶ 28).

B.      <u>Ordinance 06-617</u>

On November 28, 2006, the Miami-Dade Board of County Commissioners passed
and adopted Ordinance 06-167.  (Plaintiff's Statement of Undisputed Facts, DE 57 at ¶ 1;
Defendants' Statement of Undisputed Facts, DE 59 at ¶ 1). The ordinance amends § 12-
23, Miami-Dade County Code, by adding the following provision:

> (4)   Prohibited Signature Gathering Practices
> A.  It shall be unlawful for any person, entity, or elector intentionally to make
> or cause to be made any false statement concerning the contents or effect
> of any petition for initiative, referendum, or recall submitted pursuant to
> Article 7 of the Miami-Dade County Home Rule Charter to any person who
> is requested to sign any such petition or who makes an inquiry with reference
> to any such petition and who relies on such statement.
> B.      Any person, entity, or elector convicted of a violation of section
> 12-23(4)A of this Code shall be punished by a fine not to exceed five
> hundred dollars ($500.00) or by imprisonment in the County Jail not more
> than sixty (60) days, or by both such fine and imprisonment.

§ 12-23(4), Miami-Dade County Code; DE 59 at ¶ 5.   The ordinance imposes criminal

penalties, and does not define "false statement" or make reference to any other regulation or law defining "false statement." (DE 59 at ¶¶ 2, 6, 9).

On December 19, 2006, Carlos Alvarez, Mayor of Miami-Dade County, exercised his power to veto the ordinance.[3] (DE 57 at ¶ 2; DE 59 at ¶ 2). Mayor Alvarez's veto was overridden by the Board of County Commissioners and the ordinance is in full effect as codified in § 12-23(4), Miami-Dade County Code. (DE 57 at ¶ 3; DE 59 at ¶ 2).

Plaintiff David Dermer has read Ordinance 06-167 and believes that it has a chilling effect on his willingness to participate in any current referendums or to become involved in any initiating of a referendum on any of the important matters of public interest about which he cares deeply. (DE 57 at ¶ 10; Dermer Aff., DE 50 at ¶¶ 5, 6). Dermer is a firm believer in the right of Free Speech guaranteed by the Federal and Florida Constitutions and an individual's right to petition for governmental change through initiatives, referenda, or recalls. (DE 57 at ¶ 11; Dermer Aff., DE 50 at ¶¶ 6-8).[4]

---

[3]

It is undisputed that, in his veto message, Mayor Alvarez stated that the Ordinance 06-167 "encroached upon the people's right to dissent and act against the judgment of its elected officials." Mayor Alvarez further noted that the "petition process exists for the benefit and protection of the electorate, not the preferences of the Commission." (DE 57 at ¶ 4). However, Mayor Alvarez's opinion as to the constitutionality of the ordinances has no bearing on the Court's determination of the legal issues raised by the parties.

[4]

Pursuant to this Court's local rule 7.5, "the statement of material facts submitted in support of or in opposition to a motion for summary judgment shall ... [b]e supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court; ... All material facts set forth in the movant's statement filed and supported as required by Local Rule 7.5.C will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." S.D. Fla. L.R. 7.5(C),(D). In its Response to Plaintiff's Statement of Uncontested Facts, DE 60, Defendant denies the "facts" in the two previous sentences without providing a specific reference to any part of the record. Since I find Plaintiff's statement to be supported by summary judgment

C.   Ordinance 06-618

On November 28, 2006, the Miami-Dade Board of County Commissioners passed and adopted Ordinance 06-168 which alters the requirements for petition gathering. (DE 57 at ¶ 29). The ordinance is titled: ORDINANCE PROVIDING FOR PERIOD DURING WHICH PERSONS SIGNING A PETITION FOR INITIATIVE, REFERENDUM, OR RECALL MAY WITHDRAW THEIR SIGNATURES; PROVIDING THAT ALL PRINT ON PETITIONS FOR INITIATIVE, REFERENDUM, OR RECALL MUST APPEAR IN 12-POINT FONT AND THAT THERE BE NO MORE THAN ONE SIGNATURE PER PAGE; AMENDING SECTION 12-23 OF THE CODE OF MIAMI-DADE COUNTY, FLORIDA; .... The ordinance amended § 12-23 by adding the following provisions: (1) a 12-point font requirement (§ 12-23 (1), Miami-Dade County Code); (2)  a one signature per page requirement (§ 12-23 (1), Miami-Dade County Code); (3) an expansion of time from 15 to 30 days for signature verification (§ 12-23 (2), Miami-Dade County Code); and, (4) a revocation provision if a signature is fraudulently obtained (§ 12-23 (3)(G), Miami-Dade County Code).

More specifically, as amended, § 12-23 now requires that all future petitions must be in 12-point font with no more than 1 signature per page.[5] (§ 12-23, Miami-Dade County

_____

evidence, this fact is deemed undisputed in as much as it shows Dermer's subjective beliefs about the Ordinance and its effects on him.

[5]

Defendants argue that the requirement is necessary because print smaller than 12 point font may be illegible or hard to read to many of the elderly and not-so-elderly members of the Miami-Dade County community who will be asked to read and sign petitions. (DE 59 at ¶ 8; Plaintiff's Response to Defendants' Statement of Undisputed Material Facts, DE 66 at ¶ 8).

Code). In addition, signatories can, within 15 days of the date of the submission of the petition, withdraw their name on a form prescribed by the Department of Elections, if their signature was "fraudulently obtained." (*Id.*). Finally, the ordinance expands the time for the Supervisor of Elections to verify signatures and disqualify petitions from 15 days to 30 days. (*Id.;* DE 59 at ¶ 11). These additional requirements to the petition process are not contained in the Home Rule Charter and have not been subjected to the process for Home Rule Charter amendment. (DE 59 at ¶ 35).[6]

Ordinance 06-618 provides the following "whereas" clauses setting forth the Commissioners' factual findings:

> WHEREAS, Article 7 of the Home Rule Charter provides the method for initiative, referendum, and recall; and
> WHEREAS, this Charter provision can be implemented by ordinances designed to prevent or reduce fraud; and
> WHEREAS, this Board finds that there have been recent instances where signers of petitions have alleged that they have been fraudulently induced to sign a petition,

(Ordinance 06-618).

Mayor Alvarez exercised his power to veto the ordinance on December 6, 2006, but his veto was overridden by the Board of County Commissioners on December 19, 2006, and the ordinance is in full effect as codified in § 12-23(1)-(3), Miami-Dade County Code.[7]

---

[6]

In its Response to Plaintiff's Statement of Uncontested Facts, DE 60, Defendant denies this fact without providing a specific reference to any part of the record. Since I find Plaintiff's statement to be supported by summary judgment evidence, this fact is deemed undisputed. *See* S.D. Fla. L.R. 7.5(C), (D).

[7]

It is undisputed that, in his veto message, Mayor Alvarez echoed the concerns of Commissioners Katy Sorenson and Carlos A. Gimenez that the challenged ordinances were flawed and "encroached upon the people's right to dissent and act against the judgment of its elected officials." Mayor Alvarez noted that the "petition process exists for

(DE 57 at ¶ 30).

Lester Sola,[8] Miami-Dade County's Supervisor of Elections and a certified Supervisor of Elections by the Florida Division of Elections, has testified that there is a growing modern trend in citizen initiatives to rely upon political consultants who hire signature collectors and pay them based on the number of signatures they obtain. (DE 5 at ¶ 6; Sola Aff. at ¶ 7).

D.    The Amended Complaint

Plaintiff, the former mayor of Miami Beach, suing in his individual capacity,[9] filed the Amended Complaint in this case against Miami-Dade County and its Board of Commissioners, alleging that Ordinance 06-167 violates the First Amendment of the U.S. Constitution in that it is overbroad, vague, and does not survive strict scrutiny.  Dermer believes that the nature of Ordinance 06-167 is ambiguous and causes him to fear that the exercise of his First Amendment rights may subject him to arrest by police officers or prosecutors who believe that Plaintiff has either intentionally made a false statement or caused someone else to make a false statement that was relied upon by a third party. (DE

---

the benefit and protection of the electorate, not the preferences of the Commission." The Mayor also expressed his dismay that the Commission had illegally imposed these new requirements when one could only do so by the Charter Amendment. (*Id.* at ¶ 31). However, Mayor Alvarez's opinion as to the legality of the ordinances has no bearing on the Court's determination on the legal issues raised by the parties.

[8]

Defendant has not designated Lester Sola as and expert witness, and Sola has testified that she has personal knowledge about the industry that has developed to provide paid persons to obtain signatures for initiatives.  (Sola Aff., DE 59 at ¶ 3).

[9]

I take judicial notice that, at the time this lawsuit was filed, Dermer was the mayor of the City of Miami Beach.  However, since that time, Matti Herrera Bower has been elected to that position.

57 at  ¶ 12; Dermer Aff., DE 50 at ¶¶ 7, 8 ).  Plaintiff also argues that 06-168 is an unconstitutional usurpation of powers guaranteed by the Florida Constitution and the Miami-Dade County Home Rule Charter.  Plaintiff seeks declaratory relief, a preliminary and permanent injunction of the ordinances, and attorney's fees and costs.[10]

II.      Legal Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989).  The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact.   *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1560 (Fed. Cir. 1988).  Once this burden is satisfied, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324 (1986).  Thus, a non-movant "must do more than present some evidence on an issue it asserts is disputed."  *Avia Group Int'l, Inc.,* 853 F.2d at 1560.  A factual dispute is genuine

---

[10]

On January 25, 2008, I denied without prejudice Plaintiff's Motion for Temporary Restraining Order [DE 51].  In the Order, I stated that Plaintiff may renew his request for injunctive relief at a later time, if appropriate.

only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248.

In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-moving party. *Avia Group Int'l,* 853 F.2d at 1560. In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

III.    Analysis

A.    Ordinance 06-617

The parties agree that there is no genuine dispute of material fact that precludes the entry of summary judgment, but each side argues that they are entitled to judgment as a matter of law. Plaintiff argues that Ordinance 06-617 must be declared unconstitutional as it violates the First Amendment of the U.S. Constitution. Specifically, Plaintiff argues that the Ordinance is: (1) facially invalid pursuant to the overbreadth doctrine; (2) void under the vagueness doctrine; and, (3) an impermissible regulation of speech that cannot survive strict scrutiny. On the other hand, Defendants argue that summary judgment must be entered in their favor because Plaintiff cannot bring a facial challenge to Ordinance 06-617 and, alternatively, the ordinance is not overbroad, is not vague, and survives strict scrutiny; as such, the ordinance does not violate the U.S. Constitution.

Pertinent parts of Ordinance O6-617 provide:

TITLE:          ORDINANCE  PROHIBITING  ANY  PERSON  OR

10

ENTITY FROM INTENTIONALLY MAKING FALSE STATEMENTS CONCERNING THE CONTENTS OR EFFECT OF ANY PETITION FOR INITIATIVE, REFERENDUM, OR RECALL TO ANY PERSON WHO IS REQUESTED TO SIGN ANY SUCH PETITION OR WHO MAKES AN INQUIRY REGARDING ANY SUCH PETITION; AMENDING SECTION 12-23 OF THE CODE OF MIAMI-DADE COUNTY, FLORIDA; PROVIDING SEVERABILITY, INCLUSION IN THE CODE, PENALTY, AND AN EFFECTIVE DATE

BODY:        BE IT ORDAINED BY THE BOARD OF COUNTY COMMISSIONERS OF MIAMI-DADE COUNTY, FLORIDA:

Section 1. Section 12-23 of the Code of Miami-Dade County, Florida, is hereby amended to read as follows:[11]

Sec. 12-23. Initiative, referendum and recall petitions-Verification of signatures; disqualification of noncomplying petitions >>; prohibition on improper signature gathering practices<<.

\* \* \*

>>(4) Prohibited Signature Gathering Practices[12]

A. It shall be unlawful for any person, entity, or elector intentionally to make or cause to be made any false statement concerning the contents or effect of any petition for initiative, referendum, or recall submitted pursuant to Article 7 of the Miami-Dade County Home Rule Charter to any person who is requested to sign any such petition or who makes an inquiry with reference to any such petition and who relies on such statement.

B. Any person, entity, or elector convicted of a violation of section 12-23(4)A of this Code shall be punished by a fine not to exceed five hundred dollars ($500.00) or by imprisonment in the County Jail not more than sixty (60) days, or by both such fine and imprisonment.<<

---

[11]

Words underscored and/or >>double arrowed<< constitute the amendment proposed to the previous section of the Miami-Dade County Code.

[12]

At issue in this litigation is the addition of this subsection 4 to § 12-23 of the Miami-Dade County Code.

11

Section 2. If any section, subsection, sentence, clause or provision of this ordinance is held invalid, the remainder of this ordinance shall not be affected by such invalidity.

_____

(Am. Compl., DE 29 at Ex. 1).

Before reviewing a facial challenge to a statute vis a vis Plaintiff's arguments, I find it necessary to make general observations as to the language of the ordinance itself.  First, this ordinance does not contain any "whereas" clauses or factual findings by the commissioners.[13]   Second, although the ordinance regulates petitions for initiatives, referendum, or recalls, petitions for recalls is what prompted its enactment.  (May 6, 2008 H'rg Tr.). Third, unlike many of the ordinances discussed in cases relied on by the parties, this ordinance imposes criminal sanctions for engaging in disfavored political speech, including imprisonment of up to sixty (60) days and a fine of up to $500.00.  As a result, this ordinance can only be enforced through the established criminal process, which by necessity involves discretionary action on the part of law enforcement officials and the Miami-Dade County Office of the State Attorney.  It is beyond dispute that the possibility of being arrested, even if the charges are ultimately dismissed, acts as a deterrent to

_____

[13]

Under Florida law, "the Legislature has the final word on declarations on public policy, and the courts are bound to give great weight to legislative determinations of facts."  *Univ. of Miami v. Echarte*, 618 So. 2d 189, 196-197 (Fla. 1993) (citing *Am. Liberty Ins. Co. v. W. & Conyers Architects & Eng'r*, 491 So. 2d 573 (Fla. 2d DCA 1986)).   Additionally, "legislative determinations of public purpose and facts are presumed correct and entitled to deference, unless clearly erroneous."  *Id*. (citing *State v. Div. of Bond Fin.*, 495 So. 2d 183 (Fla. 1986); *Miami Home Milk Producers Ass'n v. Milk Control Bd.*, 124 Fla. 797, 169 So. 541 (1936)). Because Ordinance 06-617 does not contain any factual findings, no deference to any specific legislative finding is warranted.  I do assume, however, that the compelling interest the ordinance seeks to protect is to shield its County residents from fraud and to preserve the integrity of the electoral process.

12

speech.  In general terms,  the ordinance seeks to criminalize the intentional making of, or intentionally "causing to be made", false statements by any person, entity, or "elector," concerning the content or "effect" of any petition for initiative, referendum or recall to any person who is asked to sign such petition and who "relies" on the "false statement", or to any person who makes an inquiry "with reference" to such petition and who relies on the false statement.

       1.    Facial Challenges and the *Salerno* Rule

A plaintiff may attack the validity of a statute on its face or as applied.  *DA Mortgage Inc. v. City of Miami Beach,* 486 F.3d 1254, 1262 (11th Cir. 2007).  "A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself."  *Id.*  A party asserting a facial challenge "seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question."  *City of Chi. v. Morales*,  527 U.S. 41, 55 n. 22, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999). Generally, to succeed on a facial challenge of a statute, the plaintiff "must establish that no set of circumstances exists under which the [ordinance] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987); *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000) (same).  This concept, known as the *Salerno* Rule*,* has been heatedly debated in the Supreme Court and has not been consistently followed.  *See Frandsen*, 212 F.3d at 1235, n. 3 (listing Supreme Court's decisions and discussing Justices' disagreement over how high the threshold should be set for facial invalidation).[14]

---

[14]

*See, e.g., Morales*, 527 U.S. 41, 55 n. 22, 119 S. Ct. 1849, 1858-59 n. 22, 144 L. Ed. 2d

Notwithstanding the debate as to the scope and application of the rule, in *Salerno* and in subsequent cases, the Supreme Court and circuit courts, including the Eleventh Circuit, have consistently held that the overbreadth doctrine exists as an exception to the normal *Salerno* rule regarding the standards for facial challenges in cases involving the First Amendment. *See, e.g., Salerno,* 481 U.S. at 745 ("[T]he overbreadth doctrine is a specialized exception to the general rule for facial challenges, justified in light of the risk that an overbroad statute will chill free expression."); *Virginia v. Hicks*, 539 U.S. 113,

---

67 (1999) (plurality opinion) (Stevens, J., Souter, J., and Ginsburg, J.) ("To the extent we have consistently articulated a clear standard for facial challenges, it is not the Salerno formulation, which has never been the decisive factor in any decision of this Court…."); *Morales,* 527 U.S. at 79-80 & n. 2, 119 S. Ct. at 1870-71 & n. 2 (Scalia, J. dissenting) ("As Salerno noted, … the overbreadth doctrine is a specialized exception to the general rule for facial challenges, justified in light of the risk that an overbroad statute will chill free expression…. I am aware, of course, that in some recent facial-challenge cases the Court has, without any attempt at explanation, created entirely irrational exceptions to the 'unconstitutional in every conceivable application' rule, when the statutes at issue concerned hot-button social issues on which 'informed opinion' was zealously united.") (citations omitted); *Washington v. Glucksberg*, 521 U.S. 702, 740, 117 S. Ct. 2302, 2304-05, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) (Stevens, J. concurring) ("I do not believe the Court has ever actually applied such a strict standard, even in Salerno itself, and the Court does not appear to apply Salerno here."); *Janklow v. Planned Parenthood, Sioux Falls Clinic*, 517 U.S. 1174, 1175-76, 116 S. Ct. 1582, 1583, 134 L. Ed. 2d 679 (1996) (Memorandum opinion by Stevens, J. denying cert.) ("The dicta in Salerno does not accurately characterize the standard for deciding facial challenges, and neither accurately reflects the Court's practice with respect to facial challenges, nor is it consistent with a wide array of legal principles.") (quotation marks and citation omitted); *Janklow*, 517 U.S. at 1178, 116 S. Ct. at 1584 (Scalia, J. dissenting) (explaining that the question of when the Salerno rule applies "cries out for our review"); *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 942, 112 S. Ct. 2791, 2854, 120 L. Ed. 2d 674 (1992) (Blackmun, J. concurring in part, dissenting in part) ("[Chief Justice Rehnquist in a dissenting opinion] then further weakens the test [for a facial challenge] by providing an insurmountable requirement for facial challenges: Petitioners must 'show that no set of circumstances exist under which the [provision] would be valid.'"); *Casey,* 505 U.S. at 972, 112 S. Ct. at 2870 (Rehnquist, C.J. dissenting) ("Because this is a facial challenge to the Act, it is insufficient for petitioners to show that the notification provision 'might operate unconstitutionally under some conceivable circumstances.'")).

118-119 (2003) (citing *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796, 80 L. Ed. 2d 772, 104 S. Ct. 2118 (1984)); *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 318 (2000) (recognizing that there is an exception the *Salerno* rule in the First Amendment overbreadth context because of our concern that people may refrain from speech out of fear of prosecution)*; Warshak v. United States,* 490 F.3d 455, 477 (6th Cir. 2007) (*"There are a few well-known exceptions to the "no circumstances" test for facial validity. For example, in the First Amendment context, an overbreadth challenge allows a plaintiff to facially challenge a statute that can be constitutionally applied to his own conduct so as to protect the speech of others from any chilling effect the statute might have.")*; Horton v. City of St. Augustine, Florida*, 272 F.3d 1318, 1331(11th Cir. 2001)(noting that, as an exception to the Salerno rule, in the limited context of the First Amendment, a plaintiff may also bring a facial challenge for overbreadth and/or vagueness).

As the Supreme Court explained in *Morales*, the debate was precipitated by the Supreme Court's decision in *Kolender v. Lawson*, 461 U.S. 352, 359, n. 8, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983), in which the Court "confused the standard for First Amendment overbreadth challenges with the standard governing facial challenges on all other grounds."   527 U.S. 41, 78-79 n. 2, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999)*.* In *Salerno*, a criminal case, the Court repudiated the statement in *Kolender* to the effect that a facial challenge to a criminal statute could succeed "even when [the statute] could conceivably have had some valid application."   *Id.*   The *Morales* Court reiterated that, as *Salerno* had noted, 481 U.S. at 745, "the overbreadth doctrine is a specialized exception to the general rule for facial challenges, justified in light of the risk that an overbroad statute

15

will chill free expression." *Id.* (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973)).

Defendants acknowledge that when an ordinance involves First Amendment rights, the "overbreadth doctrine" may apply as an exception to the *Salerno* rule due to the fear of arbitrary enforcement and the resulting chilling effect it may have on third parties' constitutionally-protected speech. *See, e.g, Weaver v. Bonner*, 309 F.3d 1312 (11th Cir. 2002); *Horton*, 272 F.3d at 1331.   However, they argue that the Supreme Court and the Eleventh Circuit have restricted the applicability of this exception to licensing or permit ordinances.  *See DA Mortgage Inc.,* 486 F.3d at 1269 and cases cited therein ("In *general*, however, the Supreme Court and this Circuit have only applied the exception in cases where the ordinance makes access to a forum for speech contingent upon issuance of a license or permit.") (emphasis added); *Horton*, 272 F.3d at 1331-1332 recognizing that this exception has *"generally* been applied only to prior restraints on speech such as before-the-fact permitting and licensing regimes.") (emphasis added).

While the Eleventh Circuit has stated it has *generally* only applied the exception in cases involving a prior restraint, the court has not foreclosed the possibility that the overbreadth doctrine can be applied outside that context.  Moreover, the Supreme Court has never held that the overbreadth exception only applies in cases involving a prior restraint through a licensing or permit scheme.  In fact, a review of Supreme Court cases demonstrates that the doctrine has been applied in cases that did not involve a prior restraint.  *See, e.g., McConnell v. Fed. Election Comm'n,* 540 U.S. 93 (2003) (considering whether 2 U.S.C. § 203, campaign finance, was facially overbroad under the First Amendment because it captured within its reach not only campaign speech, or "express

advocacy," but also speech about public issues more generally, or "issue advocacy," that mentioned a candidate for federal office); *New York v. Ferber,* 458 U.S. 747 (1982) (considering an overbreadth challenge to a New York statute criminalizing child pornography*); Broadrick,* 413 U.S. at 612-613 (considering an overbreadth challenge to a provision of the Merit System of Personnel Administration Act which proscribed a broad range of political activities and conduct).[15]  The outcome of the overbreadth analysis in these cases is irrelevant, as it does not contravene the fact that the Supreme Court has applied the overbreadth doctrine in cases involving the First Amended outside the narrow issue of prior restraints.  Whether a statute outside this narrow area has ever been invalidated by application of the doctrine is not material to the question of whether the doctrine can be applied in the first instance.  As to this initial question, I note that the Supreme Court has consistently applied the doctrine outside of the prior restraint context, and that nothing in the jurisprudence of the Eleventh Circuit forecloses the application of the doctrine to a case such as this one which involves an ordinance seeking to regulate core political speech by imposing criminal sanctions against individuals and entities that violate its provisions.[16]

---

[15]

The *Broadrick* court also acknowledged that overbreadth attacks have been allowed where "rights of association were ensnared in statutes which, by their broad sweep, might result in burdening innocent associations."  *Id.* at 612.

[16]

Other Circuit Courts of Appeals have reviewed facial challenges for overbreadth outside the prior restraint context.  *See, e.g.,  Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655 (5th Cir. 2006) (reviewing a facial challenge for overbreadth of Louisiana's Campaign Finance Disclosure Act); *United States v. Adams*, 343 F.3d 1024 (9th Cir. 2003) (conducting a facial challenge for overbreadth review of 18 U.S.C. § 2256 (Sexual Exploitation and Other Abused of Children)); *Thompson v. Gaffney*, 540 F.2d 251, 253 (6th Cir. 1976) (reviewing petition for writ of habeas corpus attacking disorderly conduct conviction on ground that city ordinance was overbroad; stating that even though the

2.     The Overbreadth Doctrine

      As briefly discussed above, the overbreadth doctrine is an exception to the general rule on facial challenges in the context of the First Amendment.  It is well-established that the First Amendment needs "breathing space".  *Broadrick*, 413 U.S. at 611-12. For this reason, traditional rules of standing have been altered in the First Amendment area to allow "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Id.* at 612 (citing *Dombrowski v. Pfister*, 380 U.S. at 486).  The rule is based on the assumption that the statute's very existence may cause others to refrain from engaging in constitutionally protected speech or expression for fear of prosecution.  *Id.*  For this reason, "[o]verbreadth challenges are based upon the hypothetical application of the statute to third parties." *Farrell v. Burke,* 449 F.3d 470, 499 (2d Cir. 2006).

      Under the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech. *United States v. Williams*, 128 S. Ct. 1830, 1838-1839 (U.S. 2008); *Ferber,* 458 U.S. at 771 (stating that under the overbreadth doctrine, a law should be invalidated when "it reaches a substantial number of impermissible applications..."). As the Supreme Court has recently explained

> [t]he doctrine seeks to strike a balance between competing social costs. On the one hand, the threat of enforcement of an overbroad law deters people

---

petitioner's words might have been constitutionally prohibited under a narrowly drawn ordinance, "[Petitioner] may still challenge the overbreadth of the ordinance to protect 'the transcendent value to all society of constitutionally protected expression'"); *Lerman v. Bd. of Elections*, 232 F.3d 135, 144 (2d Cir. 2000) ("Since the plaintiffs challenge a statute regulating the ability to engage in interactive political speech and associational activity, their ... challenge [to] the statute on its face is governed by the overbreadth doctrine.").

from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional -- particularly a law directed at conduct so antisocial that it has been made criminal -- has obvious harmful effects. In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep.

*Id.* (internal citations omitted).

The Eleventh Circuit has described the overbreadth doctrine as permitting "the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." *Weaver*, 309 F.3d at 1318 (internal quotations and citations omitted). The doctrine protects "the public from the chilling effect such a statute has on protected speech; the court will strike down the statute even though the governmental entity enforced the statute against those engaged in unprotected activities." *Id.* The doctrine has been applied where an ordinance delegates overly broad discretion to enforcement officers which creates an impermissible risk of suppression of ideas, and where an ordinance penalizes a substantial amount of speech that is constitutionally protected. *Id.* at 1269.

Under this doctrine, "[t]he showing that a law punishes a 'substantial' amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate all enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Id.* (internal quotations and citations omitted); *see also Virginia v. Black*, 538 U.S. 343, 155 L. Ed. 2d 535, 123 S. Ct. 1536 (2003); *Ferber*, 458 U.S. at 769, n. 24; *Dombrowski v. Pfister*, 380 U.S. 479, 491, 14 L. Ed. 2d 22, 85 S. Ct. 1116 (1965). The Supreme Court has warned that the overbreadth doctrine must be used "sparingly and

only as a last resort." *Broadrick,* 413 U.S. at 613; *Williams*, 128 S. Ct. at 1838.

Plaintiff in this case argues that Ordinance 06-167 is unconstitutional on its face because it criminalizes a substantial amount of constitutionally protected political speech. First, Plaintiff argues that the term "false statement" is not defined, and the interpretation of this material yet undefined term rests on individual police officers who can target unfavorable protected speech.   Second, the ordinance is overbroad in that it reaches not only individuals who intentionally make a false statement, but also individuals who intentionally cause a false statement to be made, as well as "entities" and "electors" who intentionally make a false statement or "cause" such statement to be made.  Moreover, the ordinance reaches statements not only as to the contents of a petition for initiative, referendum or recall, but as to the "effect" of such petition, without further explaining or in anyway limiting the meaning of "effect". Finally, Plaintiff argues that the combination of the undefined "false statement" term, and the unbridled discretion that accompanies its interpretation, effectively creates a standardless test whose daily application is governed only by the police officer's subjective determination.

Defendants deny that the ordinance is overbroad for various reasons.  First, they argue that the ordinance does not need to define "false statement" because the phrase has an ordinary and common meaning, and many other ordinances, laws and regulations that have previously been upheld, prohibit the making of false statements without defining the term. *See, e.g., Pub. Citizen, Inc. v. Pinellas County,* 321 F. Supp. 2d 1275, 1292 (holding that an ordinance contained sufficiently precise and clear neutral standards that governed whether to deny, suspend, or revoke a permit, including the provision that the permit could be denied, suspended or denied when the application, which requested purely objective

information such as the name of the applicant and financial information, contained "material false information").  Second, Defendants rely on the Eleventh Circuit's decision in *Weaver* to argue that the inclusion of a *mens rea* element – i.e. the false statement must be made, or caused to be made, intentionally – coupled with the requirement that the person to whom the statement is directed at must rely on the statement, saves the ordinance from being overbroad. *See Weaver*, 309 F.3d at 1319 (striking down as unconstitutional Georgia Code of Judicial Conduct Canon 7(B)(1), but recognizing that Georgia had a compelling interest of "preserving the integrity, impartiality, and independence of the judiciary" and "ensuring the integrity of the electoral process and protecting voters from confusion and undue influence.").  Additionally, Defendants argue that Plaintiff has failed to meet his burden of demonstrating, from the text of the law and actual facts, that the ordinance penalizes a substantial amount of protected speech, not in absolute terms, but in relation to its plainly legitimate sweep.  Instead, Plaintiff has merely offered conclusory and purely hypothetical scenarios regarding how the ordinance may affect a citizen's ability to participate in the political process, going as far, without any basis, that it could "conceivably permit[]" discrimination."  Therefore, Defendants argue that the ordinance should be upheld and contend that it is a permissible attempt to preserve the integrity of the electoral process by prohibiting the making of false statements in the circulation of initiative, referendum or recall petitions.

Having considered the parties' arguments and case law, I conclude that Defendants' position lacks merit for a number of reasons.  First, the cases relied on by Defendants in support of their arguments are easily distinguishable and inapplicable to the facts of this case.  Second, the ordinance reaches a substantial amount of protected speech in relation

to its plainly legitimate sweep.  Third, the ordinance delegates overbroad discretion to law enforcement officers, thus creating an impermissible risk of suppression of ideas. Following a discussion as to each of these reasons, I conclude this section with a short discussion of examples that I find instructive in demonstrating the ordinance's broad reach.

       a.    <u>The Cases Discussed by Defendants are Factually Distinguishable</u>

Defendants primarily rely on the Eleventh Circuit's decision in *Weaver* to argue that Ordinance 06-617 is not overbroad because it contains a *mens rea* requirement.  309 F.3d at 1319.  In *Weaver*, after acknowledging that Georgia had a compelling interest of "preserving the integrity, impartiality, and independence of the judiciary" and "ensuring the integrity of the electoral process and protecting voters from confusion and undue influence," the Eleventh Circuit struck down Georgia Code of Judicial Conduct Canon 7(B)(1) because it was not narrowly tailored as it prohibited false statements negligently made and true statements that were misleading or deceptive, thus not affording the requisite "breathing space" to protected speech.  To be narrowly tailored, the provision needed an 'actual malice' standard as to the false statement made.  However, the fact that Ordinance 06-617 purports to contain an actual malice standard does not save it from its otherwise overbroad language, because other problems with the text of Ordinance 06-617 were not present in *Weaver*.   For example, the provision in *Weaver*  only applied to a narrowly defined class of speakers: candidates for any judicial office that is filled by public election between competing candidates.   In this case, the ordinance applies to all individuals and entities who exercise their rights to petition their government – a right guaranteed by the Florida Constitution and the Miami-Dade County Home Rule Charter. Moreover, a violation of the Canon of the Code of Judicial Conduct did not subject the

22

speaker to criminal sanctions as in this case.

Similarly, the cases relied on by Defendants to argue that "false statement" does not need to be defined are inapposite to this case.  The cases cited by Defendants upheld statues that regulated the making of false statements, information, and documents without defining the term. (*See* Defendants' Motion, DE 37 at p. 8).  Unlike the situation in those cases, however, there are no objective standards to determine what is a "false statement" in the context of controversial political speech and advocacy of a petition in this case.

For example, in *Public Citizen*, the Middle District of Florida upheld Pinellas County, Fla., Ordinance 93-106 regulating the solicitation of charitable contributions. 321 F. Supp. 2d 1275. The Pineallas Ordinance required "registration and full public disclosure by persons who solicit contributions for a charitable . . . purpose 13 from the public . . . in order to prevent deception, fraud, or misrepresentation in the solicitation, use and reporting of contributions." *Id*. at 1281 (quoting Pinellas County Code § 42-270).  To obtain a permit, a person was required to fill a sworn application disclosing information about the applicant.[17]  The application could be denied, suspended or revoked if it contained

---

[17] Specifically, the application requested following information: applicant's name and business information; a conviction for theft, fraud, misrepresentation, or violation of any funds solicitation law; a denial, suspension, or revocation of a solicitation permit under the ordinance or under Florida's charitable solicitation law; and both the applicant's mailing and street address and the federally issued identification number.  *Id*. (citing Pinellas County Code §§ 42-292(a)(1) to  42-292(a)(5)).  The applicant also needed to submit any agreement with a federated fundraising organization, professional solicitor, or sponsor; the applicant's registration or exemption statement issued by the state pursuant to Chapter 496, Florida Statutes; and the applicant's tax return for the preceding year or, if exempt from filing a tax return, a report of results or an unaudited financial statement for the preceding fiscal year.  *Id*. (citing  Pinellas County Code §§ 42-292(a)(6) & 42-292(a)(8) to 42-292(a)(10)).  In addition, the applicant was required to submit a statement disclosing familial and other relationships among the owners, directors, or officers of the applicant and any charitable organization and/or supplier or vendor providing goods or services to any charitable organization;  identifying the purpose of the charitable organization and the

"material false information". *Id.* at 1292 (citing Pinellas County Code § 42-293(c)(4)). While the Pinellas ordinance did not define "false information", the information sought on the application was purely objective, such as the name of the applicant and financial information.[18] In addition, in *Public Citizen*, if the applicant submitted false information, the application was merely denied; neither the person filling out the application nor the charitable organization faced criminal charges.

On the other hand, Ordinance 06-617, the Miami-Dade County ordinance at issue, prohibits much more than submitting false objective information – it criminalizes subjective political statements. What effect a petition will have if ultimately enacted cannot be objectively determined. The ordinance, as written, reaches much more than purely objective information such as the name of the organization sponsoring a petition; it also covers subjective and controversial political views and, as such, it is overbroad.

b.   The Ordinance Punishes a Substantial Amount of Protected Speech

Ordinance 06-617 is overbroad because it punishes a substantial amount of protected free speech in relation to the statute's plainly legitimate sweep. The

---

method of execution; and information on each solicitation program, including the name of the solicitation, the manner or method of solicitation, the contemplated receipts and expenses of the solicitation, the proportion of the contribution destined for the "object of the solicitation," and the plan for the distribution of contributions. *Id.* (citing Pinellas County Code § 42-292(a)(11), and (12)(a) to (12)(e)).

[18]

Similarly, in *United States v. Kehoe*, 573 F.2d 335, 335, 339 (5th Cir. 1978), the statute criminalized the making of "false entries" at credit institutions; *Banta v. State*, 642 S.E.2d 51, 53 (Ga. 2007) prohibited a person from submitting "false documents" to a government agency); and *United States v. Irving*, 509 F.2d 1325, 1328, 1331 (5th Cir. 1975) criminalized maliciously giving knowingly "false information" about an attempt of air piracy. Thus, none of these cases involved an ordinance or statute that regulated the making of subjective political statements.

constitutional sweep of this ordinance consists of a situation where an individual knowingly and intentionally lies about the text of the petition.  For example, the recall petition is to remove Commissioner X, but when a non-English speaking person asks for a translation or a visually impaired individual requests that the petition be read to him or her, the person collecting signatures says "this is a petition to extend the term of Commissioner X" or "this is a petition to lower taxes."  If content is limited to the text printed on the petition, then a police officer can objectively compare the written text with the statement the officer heard the circulator make.  If the text says something other than that stated by the circulator, the speaker has made a false statement.  In this limited situation, assuming that "content" is limited to the text on the face of the ordinance, there is an objective standard to define "false statement" since the police officer, after hearing the statement, can read the petition and determine if the statement directly contradicts what is written on the form.  But the ordinance does not end with this permissible application.

Instead, the ordinance applies not only to the speaker, but to those who "cause" the false statement to be made.  It applies to natural persons as well as to legal entities and "electors", although Defendants could not explain why the ordinance attempted to distinguish between electors and individuals given that § 12-23 (1), Miami-Dade County Code, already provides that "[n]o person may circulate a petition or solicit signatures unless he or she is a registered elector in Miami-Dade County."  In any event, an "entity" may be arrested and charged with a crime if it "causes" someone to make a "false statement" about the content or the "effects" of signing the petition.  As discussed above, these provisions are highly problematic.  Ordinance 06-617 even reaches a situation where an individual makes a false statement to a person who inquiries about the petition, without

25

even the necessity that the person to whom the statement is directed sign the petition.

S    c.    <u>Police Officers' Unfettered Discretion</u>

Ordinance 06-617 is unconstitutional because it delegates overly broad discretion to law enforcement officers and creates an impermissible risk of suppression of ideas. While the ordinance requires that the "false statement" be made, or "caused" to be made, intentionally, and further requires reliance on the part of the individual hearing the statement, these protections arise *after* a police officer arrests a person from engaging in unfavorable political speech.  These after-the-fact protections do not give core political speech the breathing space it needs. There can be no dispute that the fact that the charges may eventually be dismissed does not remedy the chilling effect created by the possibility of being arrested for engaging in core political speech.

Moreover, the ordinance does not provide any standards for law enforcement officers to determine if a statement is false; if the statement relates to the content or effect of the petition; if a group is an entity; if someone caused a false statement to be made; or if the third party relied on the false statement.  Defendants argued at oral argument that police officers are always given discretion in the enforcement of criminal laws, and that police officers will not arrest someone simply because the statement is controversial or if the statement is merely political puffery or the speaker's opinion.  However, as the Honorable Cecilia M. Altonaga recently stated, "[n]otwithstanding the County's assertions ... the Court 'must analyze [the ordinance] as written.'" *Miami for Peace, et al. v. Miami-Dade County*, Case No. 07-21088, 21 Fla. L. Weekly Fed. D297 (S.D. Fla. June 4, 2008) (Altonaga, J.) (quoting *Redner v. Dean*, 29 F.3d 1495, 1501 (11th Cir. 1994)).  It is unreasonable to "depend on the individuals responsible for enforcing [an] Ordinance to do

so in a manner that cures it of constitutional infirmities." *Redner,* 29 F.3d at 1501.  In this case, as written, the ordinance requires a police officer to subjectively decide if a statement as to the "effect" of a petition, such as "If you sign this petition our children will have a better education", is false.  Without objective standards to do so, the ordinance is impermissible overbroad.

        d.      Illustrative Examples of the Ordinance's Overbreadth

Under the applicable standard for facial challenges, as discussed beginning on page 13 above, given the confusing and poorly drafted wording of the ordinance, the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep. Since "[o]verbreadth challenges are based upon the hypothetical application of the statute to third parties," *Farrell,* 449 F.3d at 499, to assist the discussion during oral argument, the parties and the Court engaged in an extensive conversation of hypothetical situations which demonstrate the impermissible reach of the ordinance.  (*See* May 6, 2008 Hr'g Tr.).  I find the discussion and the following examples to be instructive as to the overbreadth of the ordinance as written, and I include the examples in this Order as illustrative of the way the ordinance encroaches rights guaranteed by the First Amendment.[19]

        a.      An entity hires person A and pays him to collect signatures, thus intentionally "causing" the person to make statements about the petition's contents and effects.  Person A makes what is perceived as a "false statement" by a law enforcement official, who in turn

---

[19] Defendants may argue that these are only hypothetical examples and that the County would not enforce the Ordinance in this manner.  However, as stated above, because this is a facial challenge, I must rely on the text of the ordinance and guide my decision based upon "hypothetical application of the statute to third parties." *Redner*, 29 F.3d at 1501; *Farrell,* 449 F.3d at 499.

proceeds to arrest all members of the entity.[20]   This is an impermissible regulation of political speech, as members of political organizations may face criminal charges merely by paying someone to collect signatures.

b.   Person A wants Commissioner X to be recalled. As he is collecting signatures, person B asks: Why do you want Commissioner X out of office?  Person A replies: Commissioner X is a crook, and removing him from office will result in less tax dollars being stolen and in better schools.   A police officer believes that Commissioner X is an exemplar member of the community and not a crook, that he has never stolen any funds, and that his removal will have no effect on the school system.   Police officer arrests Person A for making a false statement as to the "effect" of the recall (i.e. better schools). As to this point, what is the "effect" of an initiative or recall – will saying that "the effect of this petition is to remove Commissioner X and to end leniency on crime" be a false statement as to the effect of the petition if Commissioner X has passed more "tough on crime laws" than any other commissioner?

c.   A political group conducts a vote as to whether the group should recall Commissioner X.  The group votes 10-5 in favor of a recall. The group hires person A to collect signatures, and instructs the person that, in response to any questions, person A should say: "Commissioner X stole the funds earmarked for the new stadium; Commissioner X made false statements as to the financial impact of the new stadium; and, Commissioner X has promised his friends lucrative contracts to build the stadium at the expense of tax payers." A police officer overhears the statements and concludes that these are factual statements capable of being proved as true or false, he then asks person A for proof as to the veracity of these statements. Person A responds that the group paid him to collect signatures and to make those statements.   The police officer concludes that Commissioner X has not stolen any monies, and proceeds to arrest all members of the group, even those who voted against the recall. The police officer also arrests person A for making the statements while gathering signatures.

d.   Person A is collecting signatures, person B approaches and asks: what is the petition for? Person A responds: To recall Commissioner X, want to sign?  Person B says: No, I am not an elector in Dade County, I was just curious.  The ordinance, in actuality, is to recall Commissioner Y. Police officer arrests person A for intentionally making a false statement to a person "who makes an inquiry with

---

[20]
Defendant argues that ordinance does not apply in some of these examples, however, as will be discussed in connection with the vagueness doctrine, the text of the ordinance does not foreclose these situations from occurring.

reference to any such petition..."[21]

In sum, I conclude that the permissible reach of the ordinance – i.e. an intentional lie as to the actual words written on the face of the petition such as when a non-English speaker or a visually impaired individual asks for the text to be translated or read – is minimal compared to the broad unconstitutional sweep that the language of the ordinance permits. *Cf. Ferber,* 458 U.S. at 771 (explaining that, under the overbreadth doctrine, a law should be invalidated when "it reaches a substantial number of impermissible applications..."). Moreover, the ordinance allows a Miami-Dade police officer to arrest and individual, an elector, or an "entity" if he or she subjectively believes that any false statement, either as to the content or "effect", of any petition is false, or if he or she believes the individual, elector, or "entity" caused such a statement to be made. This unbridled discretion in the hands of police officers, and the possibility of being arrested in light of controversial political issues, have a strong chilling effect on speech. For these reasons, I find that the ordinance is overbroad and violates the First Amendment of the U.S. Constitution.

3.     Vague

A vague statute "can trap innocent parties by failing to give notice of what is prohibited, and allow enforcement officials to defer to their own standards of what constitutes a violation." *DA Mortgage Inc*, 486 F.3d at 1270-1271 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)). Usually, a

---

[21] As to this last example, while the ordinance requires a person to "relie[] on such statement," that requirement only makes the ordinance more confusing. It does not require, for example, that the person sign the petition in reliance of the false statement. Instead, it just requires that the person somehow "relied" without explaining what kind of reliance the ordinance envisions.

court evaluates a vagueness challenge by particular facts of the case before it. *Id.* (citing *Konikov v. Orange County*, 410 F.3d 1317, 1330 (11th Cir. 2005) (citing *United States v. Fisher*, 289 F.3d 1329, 1333 (2002))).   However, in the area of free speech, a vague statute can "exert a chilling effect that discourages individuals who are not present before the Court from exercising their First Amendment rights for fear of arbitrary enforcement." *Id.* (citing *Grayned*, 408 U.S. at 109).   To guard against this undesirable chilling effect on speech, the Supreme Court has relaxed standing requirements in such cases so that "courts may consider evidence of discriminatory or arbitrary enforcement that would be likely to chill expression by others." *Id.*  (citing *Konikov*, 410 F.3d at 1330 (citing *Grayned*, 408 U.S. at 109 & n.5)).

   To succeed under a void for vagueness theory, the plaintiff must show that: (1) the ordinance fails to give fair warning of what constitutes a wrongdoing; or, (2) that the ordinance lacks objective enforcement standards. *Id.; Weaver*, 486 F.3d at 1271.   A statute is void on its face if it is so vague that "persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926). This test is applied stricter to statutes that inhibit free speech.  *DA Mortgage Inc.,* 486 F.3d at 1271.

   Dermer takes issue with the following undefined terms: "false statement";  "*cause* to be made"; "concerning the contents or *effect* of any petition for initiative, referendum, or recall"; "who makes an inquiry with reference to such statement and who *relied* on such statement." Dermer argues that the ordinance is vague both because it fails to provide fair warning of the conduct that is prohibited and lacks any objective standards.  According to him, a person of ordinary intelligence may not understand that certain comments, even

aggressive advocacy, may constitute false statements.  In failing to define "false statement" and leaving its definition to the unfettered discretion of police officers, the ordinance reaches a substantial amount of constitutionally protected conduct.

Defendants note that ordinarily, a plaintiff cannot bring a facial challenge to an ordinance based on unconstitutional vagueness and that, instead, the plaintiff must show that an ordinance is vague as applied to the particular facts of his case.  Defendants concede, however, that when an ordinance restricts First Amendment rights, a plaintiff can seek to validate the rights of those not before the court and show that an ordinance is vague on its face, since fear of arbitrary enforcement can create a chilling effect on constitutionally protected speech of non-parties.  In this case, according to Defendants, the ordinance is not vague because "false statements" has an ordinary meaning, and an ordinance that uses words of common understanding does not require any guessing as to how it may be applied.  Further, courts in this circuit have upheld statutes prohibiting false statements that do not define "false."  Therefore, Defendants argue, given its plain and ordinary meaning, Ordinance 07-617 provides more than the required fair warning of what conduct is proscribed, and provides sufficient guidance for citizens, policemen, juries and judges to evaluate the term.  In addition to these arguments, at the May 6, 2008 hearing, I engaged the parties into a discussion of the terms "effect";  "elector" and how it may differ from "person" or "entity"; and, the meaning of the words "cause to be made." [22]

---

[22] The problems discussed in relation with the overbreadth doctrine, such as the lack of definitions and objective standards, also make the ordinance impermissible vague.  Defendants, who have drafted this ordinance, had difficulty answering my questions regarding the meaning of specific words and phrases in the ordinance.  I too had trouble deciphering the reach of the ordinance.  If the drafters and the Court cannot articulate the ordinance's meaning, it is highly probable that "persons of common intelligence must necessarily guess at its meaning and differ as to its application."  *Connally*, 269 U.S. at

As discussed in relation with the overbreadth analysis, there is no standard for law enforcement officers to determine if a statement is "false", specially as it relates to the "effect" of the petition.  Despite a lengthy discussion at oral argument, it was not clear to Defendants, and still not clear to me, what is meant by the "effect" of a petition and how that differs from the contents.  (*See* May 6, 2008 Hr'g Tr.).  More specifically, the term "false statement" is vague in the context of political advocacy because what is false as to the effect of a petition depends on the speaker's views and beliefs.  Petitions for referendums, initiatives, and recalls are not like tax returns or applications for permits which contain information that can objectively be labeled as true or false.

The ordinance is also vague as to the meaning of an entity and as to how someone "causes" a statement to be made.  The term entity covers "fictional legal persons" such as corporations and other business entities.  However, it is less clear if a group of friends who, without registering with the state, form an informal group to recall a specific commissioner and together recruit several individuals to collect signatures is also considered an "entity."  Moreover, as to entities, it is not clear how the sanctions will be imposed.  Whether every member of a so called entity can be arrested, or only its president or "leader" is unknown.[23]  Moreover, it is not clear how an entity intentionally causes a false statement to be made.  One interpretation is that paying an individual to collect signatures and discuss the petition with the public is sufficient to find that the entity intentionally caused the statement to be made, even though the entity was not aware that the speaker would make a false

391.

[23]

Although not raised by Plaintiff and not addressed in this Order,  the fact that an "entity", which presumably means its members, can be arrested may also implicate the freedom of association guaranteed by the First Amendment.

statement.  In sum, the text of the ordinance in this case both fails to give fair warning of what constitutes a wrongdoing, and lacks objective enforcement standards for police officers to adhere to.  As such, it is unconstitutionally vague.

     4.    <u>Strict Scrutiny</u>

_____The circulation of a petitioner is core political speech; as such, ordinances that restrain or regulate this type of speech are subject to strict scrutiny.  *Meyer v. Grant,* 486 U.S. 414, 420 (1988), *cited with approval in McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995)[24]; *Weaver,* 309 F.3d at 1319 ("The proper test to be applied to determine the constitutionality of restrictions on 'core political speech' is strict scrutiny.").  Under the strict-scrutiny test, the party supporting the rule has the burden to prove that the rule is (1) narrowly tailored, to serve (2) a compelling state interest.  In order to show that the rule is narrowly tailored, the party must demonstrate that it does not unnecessarily circumscribe protected expression.  *Republican Party v. White*, 536 U.S. 765, 774-75 (2002); *Weaver,* 309 F.3d at 1319.  The government bears the burden of establishing the compelling interest and the narrowly tailored requirement.  *Id.*  To show that the statute is narrowly tailored, the government must demonstrate that "it does not 'unnecessarily circumscribe protected expression.'" *Republican Party*, 536 U.S. at 774-75 (quoting *Brown v. Hartlage*, 456 U.S. 45, 54, 71 L. Ed. 2d 732, 102 S. Ct. 1523 (1982)).  "As is well known, strict scrutiny readily, and almost always, results in invalidation."  *Vieth v. Jubelirer*, 541 U.S. 267, 294 (2004).

     Courts have recognized that a government's interest in preventing its citizens from

---

[24]

Defendants concede that the standard that must be applied to the ordinances at issue is strict scrutiny.  *See* Defendants' Motion to Dismiss/Summary Judgment, DE 37 at pp. 2-3.

making false statements is substantial, and the government may protect the public from fraud through a narrowly tailored regulation. *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 70 (1971) (libel action); *Riley v. Nat'l Fed. of the Blind of N.C., Inc.*, 487 U.S. 781, 792 (1988) (applying strict scrutiny and finding that the government may protect the public from fraud through a narrowly tailored regulation); see also *Butler v. Ala. Judicial Inquiry Comm'n,* 802 So. 2d 207, 216 (Ala. 2001) (holding that preserving the integrity of the judiciary was a compelling government interest, which the government can serve by prohibiting candidates from disseminating maliciously false information about other candidates); Meyer, 486 U.S. at 415, 427 (recognizing that Colorado had in interest in ensuring that an initiative had support sufficiently broad enough to justify ballot placement and in preserving the integrity of the initiative process, but held as not surviving strict scrutiny a statute prohibiting payment of initiative petition circulators, since existing statutes, including one that prohibited false statements related to the circulation of initiative petitions, sufficiently met its interests).   The Eleventh Circuit has also recognized that a government may have a compelling government interest in ensuring the integrity of the judiciary and the electoral process and protecting voters from undue influence.   In so doing, however, the Eleventh Circuit invalidated a code addressing the interest on the grounds that it was not narrowly tailored. *Weaver*, 309 F.3d at 1319. [25]

　　　In reviewing a county ordinance, the County's interpretation is entitled to deference.

---

[25]

In *Weaver,* the court held that to be narrowly tailored, the code should only prohibit judicial candidates from making knowingly or recklessly false statements, not negligently false statements or true but misleading statements. *Id.* ("[T]to be narrowly tailored, restrictions on candidate speech during political campaigns must be limited to false statements made with knowledge of falsity or with reckless disregard as to whether the statement is false – i.e., an actual malice standard.") (citing *Brown v. Hartlage*, 456 U.S. 45, 61 (1982))).

*Cafe Erotica of Fla., Inc. v. St. Johns County*, 360 F.3d 1274, 1287 (11th Cir. 2004) (citing *Southlake Prop. Assocs. v. City of Morrow*, 112 F.3d 1114, 1119 (11th Cir. 1997). However, deference is only warranted when the interpretation is based on a permissible construction of the ordinance. *Id.* Thus, when the county's interpretation "effectively rewrites the Ordinance by completely disregarding certain Ordinance provisions," no deference should be given. *Id.*

Dermer argues that the ordinance does not survive strict scrutiny because it is entirely open-ended and impermissibly sweeping in that it targets all speech in the wide-ranging political context of advocacy of a referendum or initiative, with no guidelines and no definition of exactly what it is that's being prohibited. Not only does the ordinance target people who purportedly make intentionally or maliciously false statements, it also targets an unknown category of people who "cause" these statements to be made. According to Plaintiff, the ordinance is not narrowly tailored in that the sweeping reach of the ordinance allows for no "breathing space" to debate controversial issues. Additionally, Dermer argues that the government's interest to regulate a "growing modern trend in citizen initiatives to rely upon political consultants who hire signature collectors and pay them based on the number of signatures they obtain" is not a compelling interest to justify a grant to the police of the power to arrest persons for the content of their political speech.

Defendants argue that the ordinance does survive strict scrutiny: the ordinance serves the government's compelling interest in preventing corruption of the petition process and addresses interests recognized as substantial and compelling, i.e., preventing citizens from making false statements and protecting the public from being defrauded of their political rights. Further, the ordinance is narrowly tailored in that it is restricted to

intentionally-made false statements and requires reliance on the part of the person to whom the false statement was made. In his reply, Dermer responds that the *mens rea* requirement does not cure the vast chilling effect of the ordinance because the police officer is allowed to make the arrests before the *mens rea* element is determined, and the fact that police officers can arrest those seeking to use the initiative process impermissible chills protected speech. Dermer adds that the only person making the initial determination before the arrest – the police officer – is perhaps the least capable in a political campaign.

Although the ordinance did not incorporate any factual findings by the Commissioners, for purposes of summary judgment, I assume that the compelling state interest the ordinance seeks to protect is to shield its residents from fraud and to preserve integrity in the electoral process. Acknowledging that the Supreme Court and the Eleventh Circuit have previously found these governmental interests to be compelling, the ordinance nonetheless fails to pass constitutional muster because, as discussed above, it is vague and overbroad and therefore not narrowly tailored. An ordinance that is overbroad cannot, by definition, be narrowly tailored. I thus do not need to repeat the analysis found in section III.A.2 of this order, and instead conclude that, for the same reasons the ordinance is overbroad and vague, the ordinance fails to be narrowly tailored. Suffice it to add that, as written, the making and *causing to be made* undefined *false statements* about the content or *effect* of a petition is a crime, even when the person to whom the statement is made does not sign the petition, and such broad regulation of core political speech is not necessary to address the proffered government interest.

5.   <u>Severability</u>

Generally, courts dealing with an overbroad challenge to a statute should "construe

the statute to avoid constitutional problems, if the statute is subject to such a limiting construction." *Ferber*, 458 U.S. at 769 (citations omitted).  If the statute is not subject to a narrowing construction and is impermissibly overbroad, it nevertheless should not be stricken down on its face if it is severable. *Id.*  Instead,  only the unconstitutional portion is to be invalidated.  *Id.* (citing *United States v. Thirty-seven Photographs*, 402 U.S. 363 (1971)).  A court reviewing an overbroad statute is faced with two competing policies: "the Court must make every reasonable construction of the Ordinance to save it from unconstitutionality; at the same time, the Court will not re-write an ordinance because [that] is a function that is within the province of the County." *Cafe Erotica of Fla., Inc. v. St. Johns County*, 360 F.3d 1274, 1292 (11th Cir.  2004).

Under Florida law, "[w]hen part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1)  the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken."  *Seay Outdoor Adver., Inc. v. City of Mary Esther*, 397 F.3d 943, 949-950 (11th Cir. 2005); *Cafe Erotica of Fla., Inc.,* 360 F.3d at 1292 ("Florida law requires [a court] to sever any provisions of [an] Ordinance that it finds unconstitutional, while allowing valid portions to stand, but only if problematic provisions can be distinguished and clearly separated  from the remainder.").  "According to Florida law, then, the unconstitutional part of a challenged statute should be excised, leaving the rest intact and in force, when doing so does not defeat the purpose of the statute and

leaves in place a law that is complete."  *Seay Outdoor Adver., Inc.*, 397 F.3d at 950.

If a portion of an ordinance is easily severable, but severance of such provision does not address all of the concerns with the ordinance, the district court may properly decline to sever it.  *Id.*  The Eleventh Circuit has recognized that "interests of federalism and comity dictate conservatism to federal courts in imposing their interpretative views on state statutes."  *Id.* (citing *Nat'l Adver. Co. v. Town of Niagara*, 942 F.2d 145, 151 (2d Cir. 1991)).

Ordinance 06-617 contains a severability provision.  Specifically, section 2 provides "[i]f any section, subsection, sentence, clause or provision of this ordinance is held invalid, the remainder of this ordinance shall not be affected by such invalidity."  However, applying the Florida test for severability, I cannot separate the unconstitutional provisions and leave in place an ordinance that is complete since the problematic provisions canmot be distinguished and clearly separated  from the remainder.  The re-writing of Ordinance 06-617 is a function within the County's province, and not a function of a federal court.  I thus invalidate ordinance 06-617 in its entirety, thus giving the County the opportunity to rewrite it.

B.    Ordinance 06-618

As was the case with Ordinance 06-617, the parties do not argue that a material issue of fact precludes summary judgment as to Ordinance 06-618.  Rather, Plaintiff argues that it is entitled to summary judgment because the ordinance is an unconstitutional usurpation of self-executing powers given to citizens by the Florida Constitution and the Miami-Dade County Home Rule Charter to petition their government directly.  Specifically, Dermer objects to the following provisions in the ordinance as having been enacted by

legislative act rather than through constitutional and charter amendments as required: (1) only one signature per page; (2) expanding the time the Supervisor of Elections has to review and disqualify signatures from 15 to 30 days; (3) font must be 12 points; and, (4) provisions allowing signatories to withdraw their signatures if obtained through fraud.[26] He argues that these new requirements do not advance ballot integrity and are specifically designed by Commissioners to make it virtually impossible for citizens to gather signatures for their petitions.

According to Defendants, Plaintiff's state law challenges, which Defendants allege are impermissibly being brought pursuant to 42 U.S.C. § 1983, fail because Ordinance 06-618 is permissible supplemental legislation that limits fraud in the solicitation of signatures, thereby protecting the integrity of the ballot upon which the initiative process depends. They argues that Ordinance 06-618 is a permissible and reasonable regulation that detects and limits fraud in the solicitation of signatures and thereby protects the integrity of the ballot upon which the initiative process depends.

The Miami-Dade Home Rule Charter and the Florida Constitution provide self-

---

[26] According to Dermer, the one signature per page rule does not ensure ballot integrity, but it is designed to make the process too expensive or virtually impossible to gather petitions. Similarly, Dermer argues that ballot integrity is not advanced by expanding the amount of time the Supervisor of Elections is given to review the signatures. Finally, he argues that the 15 days provision which allows a citizen to withdraw his/her signature will create a "cottage industry" of individuals who will coerce individuals from withdrawing their signatures, and that the ordinance has no legitimate objective. In sum, he argues that the ordinance is merely an attempt to usurp the power of the people to petition their government by initiatives, referenda and recalls. Dermer asks the court to exercise its pendent jurisdiction to strike down the ordinance because it is not necessary to ensure ballot integrity and is rather a blatant attempt to restrict the initiative process and to strengthen the power of the Miami-Dade Board of Commissioners by making the petition process more burdensome and expensive. He notes that the existing regulations already ensure ballot integrity (i.e. notarization requirements and signature verification, among others).

executing rights directly to the citizens to petition their government.  These rights can only be taken away by Charter or Constitutional Amendment.  The Florida Supreme Court has recognized that the Legislature and the Secretary of State have a duty to "ensure ballot integrity" in the initiative process, but rules regulating the citizen initiative process are constitutionally permissible "only when necessary to ensure ballot integrity."  *Id.*.  *See, e.g., State ex rel. Citizens Proposition for Tax Relief v. Firestone*, 386 So. 2d 561, 566 (Fla. 1980) (discussing the delicate balance between the power of the people to propose amendments through the initiative process and the power of the legislature to propose amendments by legislative action). Recently, the Florida First District Court of Appeal held that "legislative enactments and administrative rules burdening the initiative process with requirements that are neither proscribed by the constitution nor *necessary* for the orderly presentation of these proposals are unconstitutional."  *Fla. Hometown Democracy, Inc. PAC v. Florida*, Case No. 1D07-6024 (Fla. 1st DCA April 23, 2008) (emphasis in original) (*available at* http://opinions.1dca.org*)*.  Modification of the initiative process through measures which are *no*t necessary to ensure ballot integrity must be accomplished through constitutional amendment.  *Id.* (citing *Smith v. Coalition to Reduce Class Size*, 827 So. 2d 959 (Fla. 2002) (invalidating a legislative enactment that would have required the recitation of a separate 'analysis and fiscal impact statement' following the summary of the proposed amendment)).

In their initial submission, Defendants relied on *Florida Hometown Democracy, Inc. v. Department of State,* Case No. 207 CA 2278 (Fla. 2d Cir. Nov. 27, 2007), in which the trial court upheld the constitutionality of a state law allowing the concept of petition signature revocation.  In entering summary judgment in favor of the Secretary of the State,

the trial court held that the revocation provision did not constitute an unlawful amendment to the Florida Constitution's self-executing initiative process.  Defendants argued that this decision was dispositive as to the issue before me.  However, prior to oral argument, the Florida First District Court of Appeal reversed the trial court, and held that the concept of signature revocation is not mentioned in the Florida Constitution and the measure does not ensure ballot integrity.  *See Fla. Hometown Democracy, Inc. PAC, et al. v. Browning, et al.*, Case No. 1D07-6024, 2008 Fla. App. LEXIS 6286 (Fla. 1st DCA April 23, 2008).  The parties agree that the decision in this case is dispositive as to the revocation provision of the ordinance at issue in this case.

Generally, in the Eleventh Circuit, a federal court applying state law, "[i]n the absence of definitive guidance from the Florida Supreme Court, ... follow[s] relevant decisions from Florida's intermediate appellate courts."  *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004) (citing 17A James Wm. Moore, et al., *Moore's Federal Practice* § 124.22[3]. 124-87, 124-88).  The reason is that Florida District Courts of Appeal are the law of Florida unless and until overruled by the Florida Supreme Court.  *Pardo v. State*, 596 So.2d 665, 666 (Fla. 1992).  Thus, "[a] federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise."  *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983) (citations omitted).  Under this rule, I am bound by the decision of Florida's First District Court of Appeal.  However, the decision has been appealed, and the Florida Supreme Court has accepted jurisdiction.  *See Browning, et al. v. Fla. Hometown Democracy, Inc. PAC, et al.,* Case No. SC08-884 (lower tribunal case no. 1DO7-6024).

The decision by the Florida Supreme Court will be binding as to the revocation provision of the ordinance before me, and will likely shed light as to the other provisions Plaintiff challenges as it will be Florida Supreme Court's most recent opinion on the issue of rules regulating the citizen initiative process.  For this reason, I elect to stay my decision on the validity of Ordinance 06-618 pending the decision of the Florida Supreme Court in *Browning,* Case No. SC08-884.

In light of Florida's First District Court of Appeals decision, Plaintiff may seek a preliminary injunction to enjoin the application of Ordinance 06-618 while this matter is stayed.[27]  My decision to grant leave to seek a preliminary injunction enjoining the enforcement of Ordinance 06-618 does not decide the merits of Plaintiff's case, and the temporary injunction will only be granted if Plaintiff meets his burden of demonstrating: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury without the injunction; (3) that the harm to the moving party outweighs the harm to the non-moving parties; and, (4) that an injunction would be in the interest of the public. *Wall v. Ferrero*, 142 Fed. Appx. 405, 407 (11th Cir. 2005) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

IV.   Conclusion

Having reviewed the Motion and Cross Motion for Summary Judgment and related pleadings, and having considered the applicable law and the parties' arguments, for the reasons stated above, it is hereby ORDERED AND ADJUDGED:

1.      Defendants' Motion for Summary Judgment [DE 37] is DENIED in part and

---

[27]

Since I have determined that Ordinance 06-617 is unconstitutional, Defendants are permanently enjoined from enforcing it.  The leave to file a motion for a preliminary injunction is related only as to Ordinance 06-618.

STAYED in part. The motion is denied as to Ordinance 06-617, but I reserve ruling on Ordinance 06-618 pending the Florida Supreme Court's decision in *Kurt S. Browning, et al. v. Fla. Hometown Democracy, Inc. PAC, et al.,* Case No. SC08-884 (lower tribunal case no. 1DO7-6024).

2.    Plaintiff's Cross Motion for Summary Judgment [DE 55] is GRANTED in part and STAYED in part. The motion is granted as to Ordinance 06-617. However, I reserve ruling on Ordinance 06-618 pending the Florida Supreme Court's decision in *Browning,* Case No. SC08-884.

3.    Miami-Dade County Ordinance 06-617 is STRICKEN because it violates the First Amendment of the U.S. Constitution. Defendants are permanently enjoined from enforcing Ordinance 06-617.

4.    Plaintiff's request for an award of attorneys' fees and costs will be considered upon the filing of the appropriate motions following a final ruling on Ordinance 06-618.

5.    Plaintiff is given leave to file a motion for preliminary injunction to enjoin enforcement of Ordinance 06-618, if necessary.

6.    The Clerk of Court is instructed to ADMINISTRATIVELY close this case.

7.    I retain jurisdiction to consider the motion for preliminary injunction as to Ordinance 06-618 if requested; on the issue of attorneys' fees and costs upon the appropriate motions; and on the validity of Ordinance 06-618 upon the Florida Supreme Court's decision. The parties should seek to reopen this matter once the Florida Supreme Court issues its decision. At that time, I will set an additional briefing schedule and oral argument, if needed.

DONE AND ORDERED in Chambers at Miami, Florida, this 1st day of August, 2008.

THE HONORABLE ALAN S. GOLD
U.S. DISTRICT JUDGE

cc:   U.S. Magistrate Judge Chris M. McAliley
      Counsel of record

44